64 P.3d 1080 (2002)
2002 OK 83
In the Matter of S.B.C., Deprived child under 18 years of age.
Patricia Widick, Natural Mother and James Collins, Natural Father, Appellants,
v.
The State of Oklahoma, Appellee.
No. 96,352, 96,362.
Supreme Court of Oklahoma.
October 29, 2002.
*1081 Patricia Widick, pro se, Tulsa, for appellant.
Tim Harris, District Attorney, C. Kevin Morrison, Assistant District Attorney, Tulsa, for appellee.[2]
OPALA, J.
¶ 1 Certiorari was granted to resolve a point of federal constitutional law the Court of Civil Appeals (COCA) has overlooked in reviewing this case. The dispositive issue is whether the any-competent-evidence standard applied by the COCA in this parental-rights-termination case meets the level of appellate scrutiny mandated by the U.S. Constitution's Fourteenth Amendment. We answer in the negative.

THE ANATOMY OF LITIGATION
¶ 2 S.B.C. was born 5 August 2000 to petitioner Patricia Widick (Widick or mother) and James Collins (Collins or father). Widick and Collins are not married[3] but live together with the mother's twelve-year-old son from a previous marriage.[4] Because a job-related injury prevented the father from engaging in his occupation as a carpentry framer, he was the child's full-time caregiver.[5] The mother, who worked long hours, was the primary wage earner.
¶ 3 Within the first few months of the child's life, the father reported seemingly minor accidents when the child was in his care. The first occurrence took place on October 5 when he reported the two-month-old infant had rolled off the bed onto the floor. Eight days later the father reported the child rolled off the sofa. On November 13 Collins called Widick at work to report that he had fallen while holding S.B.C. On each occasion the mother examined the child and concluded no serious harm had occurred, but noted minor abrasions including a red rope-like bruising around the infant's neck sustained during the bed incident, a small bruise on the shin from the fall off the sofa, and bruising around the eye and nose which appeared after Collins fell with the baby. S.B.C. was not taken directly to a hospital or physician as a result of the reported accidents. At a previously, regularly scheduled doctor's visit which occurred two days after the father fell while holding S.B.C.  the physician's report indicated the child was healthy and made no mention of suspected abuse. On the afternoon of November 21 the father noticed a swollen area on the infant's head and phoned the mother. Neither parent indicated there had been another accident affecting S.B.C. Both parents took the child to an emergency room where x-rays indicated S.B.C. had numerous, serious injuries sustained at different times. X-rays revealed the four-month-old infant suffered a skull fracture within the last twenty-four hours, a ten-to-fourteen-day-old healing rib fracture, and a metaphyseal lesion (commonly called a "bucket handle fracture" of the tibia, which is consistent with shaken baby syndrome).[6] The infant also exhibited "petechia" on his back (a mass of red pinpoint-like marks which are common following slapping or hitting of the skin). Suspecting abuse, the emergency room physician reported the incident and the infant was placed in protective custody.
¶ 4 After a bifurcated hearing a jury found (1) S.B.C. to be a deprived child; (2) the father physically abused the child in a manner that was severe, shocking, or heinous; (3) the mother failed to protect the child from the abuse; and (4) both parents' rights should be terminated in accordance with applicable provisions of 10 O.S. Supp. 2000 § 7006-1.1.[7] The trial court declared *1082 S.B.C. to stand in a deprived child status and entered an order terminating the parents' rights. The mother appealed, complaining of insufficient notice of the abuse for a meaningful opportunity to protect the child and absence of evidence to support the verdict. The Court of Civil Appeals, Division II, applying the common law's any-competent-evidence standard,[8] affirmed the trial court's order.[9] The father's separate appeal was later withdrawn from assignment to the Court of Civil Appeals, Division II, and transferred to this court to be consolidated with the mother's earlier-granted certiorari for disposition by a single opinion.
APPELLATE REVIEW OF PARENTAL-STATUS-TERMINATION DECISIONS MUST BE BASED UPON THE CLEAR-AND-CONVINCING EVIDENCE STANDARD
¶ 5 Acknowledging that freedom of choice in the care and management of one's child is a fundamental liberty interest sheltered by the Constitution, the United States Supreme Court, in Santosky v. Kramer,[10] pronounced its constitutional command that before a state may sever the rights of parents in their natural child, the state must support its allegations at trial by at least clear-and-convincing evidence. That alone stands as a command that juries not use a different measure of proof. Simply stated, the question before us here is what standard must the appellate courts apply when reviewing disputed proof in parental-status-termination cases?
¶ 6 Appellate courts must aid in enforcing the Santosky-mandated federal constitutional standard of persuasion by canvassing the record on review to ascertain whether nisi prius fact findings rest on clear-and-convincing proof.[11] If a lower standard of review were to be adopted for scrutiny of these critical findings, the courts of first instance would remain free to disregard the clear mandate of Santosky by allowing an impermissibly low burden of persuasion to govern at trial.[12] Continued *1083 application of common-law review standard also would make reversal-proof those judgments which rest on competent evidence but stand unsupported by clear-and-convincing proof. Any level of appellate scrutiny that is less stringent than that of searching for proof of clear-and-convincing nature will undermine the higher level of protection imposed by Santosky to safeguard the parents' fundamental right to their offspring.
¶ 7 We are hence persuaded that, in order to assure faithful nisi prius compliance with the federal mandate, appellate review of a parental-bond severance must be conducted by searching for the presence of clear-and-convincing proof. The heightened test that is accorded fundamental rights would be watered down  if not indeed rendered meaningless  by the use on review of anything less than the very same standard as that which is required in the trial courts. In short, to warrant affirmance of nisi prius findings, appellate review in a parental-bond-severance proceeding must demonstrate the presence of clear-and-convincing evidence to support the first-instance decision.
¶ 8 We express here no view on any errors argued by the parents. The cause is remanded to the Court of Civil Appeals, Division II, for that court's reconsideration by applying the review standard consistent with today's pronouncement and for resolution of all other issues urged in the consolidated cause.
¶ 9 HARGRAVE, C.J., HODGES, LAVENDER, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.
¶ 10 WATT, V.C.J. and KAUGER, J., concur in result.
NOTES
[2] Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.
[3] At the time of the hearing the father was legally married to another woman, with whom he has a child who resides with the out-of-state mother.
[4] Widick has a third child who resides with his father in another state.
[5] At the time of trial the father had returned to gainful employment.
[6] Trial testimony indicates the x-ray revealed a fourth broken bone, a clavicle.
[7] The relevant terms of 10 O.S. Supp.2000 § 7006-1.1(A)10a provide:

* * * A. Pursuant to the provisions of the Oklahoma Children's Code ... a court may terminate the rights of a parent to a child in the following situations ...
10. A finding in a deprived child action either that:
a. The parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse that is heinous or shocking to the court, ... * * *
[8] Nealis, supra note 1 at ¶ 47, at 456.
[9] COCA noted confusion in the authority sources on the standard of appellate review to be applied in parental-rights-termination cases. COCA opinion, p. 8n.1. The Supreme Court of Oklahoma has adopted the clear-and-convincing evidence standard of persuasion for the termination-seeking party. Matter of Adoption of Darren Todd H., 1980 OK 119, ¶ 18, 615 P.2d 287, 290; Matter of C.G., 1981 OK 131, ¶¶ 15-17, 637 P.2d 66, 69-71. Clear-and-convincing evidence is defined as that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established. Matter of C.G., at ¶ 12n.12, at 70 (citing Matter of Sherol A.S., 1978 OK 103, ¶ 22, 581 P.2d 884, 888 (1978).) COCA applied herein the legal standard of appellate review  that of any competent evidence. Court of Civil Appeals Opinion, Division II, p. 8.
[10] Due process mandates the State to support its allegations by at least clear-and-convincing evidence before the bond between parent and child may be judicially severed. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982).
[11] We have required that for termination of parental rights proof be clear and convincing. Matter of T.R.W., 1985 OK 99, ¶¶ 29-30, 722 P.2d 1197, 1203.
[12] States that employ a stricter standard of review in termination cases have a stronger argument than those using a lower one. It would be anomalous to apply a low-level standard of appellate review when the law shows high regard for parental rights. James W. Paulsen, Family Law: Parent and Child, 51 SMU L.Rev. 1087, 1124 (1998). Where a fundamental liberty interest in the care and custody of a child is at stake, neither the "any evidence" standard of review for civil cases of legal cognizance nor the "reasonable evidence" standard is of "sufficient quality and substantiality to support the rationality of the judgment." Blackburn v. Blackburn, 249 Ga. 689, 292 S.E.2d 821 (1982). The court held in the last cited case that the appropriate standard of appellate review (where a parent's rights to the child have been severed) is whether any rational trier of fact could have found by clear-and-convincing evidence that the parent's right had been lost. Blackburn, at 826.

A strong argument could also be advanced that failure to apply on appeal a standard of review at least equal to that which governs in the trial court is constitutionally impermissible. See Bose Corp. v. Consumers Union of the United States, Inc., 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), which holds that despite the normal federal "clearly erroneous" standard of appellate review (for defamation cases), independent appellate review of proof of "actual malice" must be established by evidence of convincing clarity. Because parental rights are no less fundamental than those of free speech, a review standard that is at least as protective as that which is required at trial appears mandated by analogy to the Court's reasoning in Bose Corp. Paulsen, supra at 1124-25.